UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| KERWYN LYKKEN and<br>ESTHER LYKKEN, | ) | CIV.  07-4020-KES |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING IN PART |
| CRYSTAL BRADY; | ) | AND DENYING IN PART |
| MICHAEL BRALEY; | ) | MOTIONS FOR SUMMARY |
| FRED DEVANEY; | ) | JUDGMENT |
| TREVOR JONES; | ) | |
| KEVIN THOM; and | ) | |
| MIKE BUCHOLZ, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants move for summary judgement on all claims asserted by

plaintiffs.  Plaintiffs oppose the motions and move to continue this court's

ruling on summary judgment to allow additional discovery.

**FACTUAL BACKGROUND**

Plaintiffs, Esther and Kerwyn Lykken, are the owners of farmland in

rural Union County, South Dakota (hereinafter referred to as Lykken

property).  Both Esther and Kerwyn maintain a residence on the land.

In 2004, the South Dakota Attorney General's Office reopened an

investigation into the 1971 disappearance of two teenage girls in rural

Union County.  Defendant Michael Braley, a Special Agent of the South

Dakota Division of Criminal Investigation (DCI), was assigned to the case as

the lead investigator.  David Lykken, a current inmate at the South Dakota State Penitentiary, became a suspect in the investigation.  David Lykken resided on the Lykken property in 1971.

Braley applied for and obtained a search warrant for the Lykken property on August 20, 2004.  The warrant was executed on August 24, 2004, by defendants Braley, Fred Devaney, Trevor Jones, and Kevin Thom, all of whom were acting as agents of DCI.  Defendant Crystal Brady, a detective with the Vermillion Police Department, and defendant Mike Bucholz, a deputy sheriff of Union County, also were present on August 24, 2004, and assisted in the execution of the search warrant.

Plaintiffs allege that the methods used by defendants while executing the search warrant on August 24, 2004, resulted in a violation of plaintiffs' constitutional rights.  Plaintiffs allege that upon arrival defendants separated Esther and Kerwyn and seized both of them, disrupting their farm work.  Plaintiffs assert that Esther, an 84-year-old widow, was forced to remain outside her home from 10 a.m. until 8:15 p.m. on what was a very hot day.  Plaintiffs assert that Esther was not allowed to turn off her stove or feed her kittens, not allowed entry to her home to eat any food, and was repeatedly questioned regarding any knowledge of the disappearance of the girls in 1971.

2

Plaintiffs assert that Esther's adult son, Kerwyn, was asked to drive to Elk Point, South Dakota, and submit to a lengthy interview. Subsequently, Kerwyn was asked to drive Vermillion, South Dakota, for a polygraph examination. Plaintiffs assert that during that time, Kerwyn was continually questioned regarding the 1971 disappearance of the girls. Kerwyn asserts that at 7 p.m. he demanded to leave Vermillion and was allowed to travel back to the Lykken property, where he was told that he would have to leave the property after he retrieved clothing. Both Kerwyn and Esther were not allowed on their property for four days, until August 28, 2004. Plaintiffs assert that during the course of the search, defendants caused unnecessary damage and failed to restore their property to its condition prior to the search.

Defendants conducted two additional searches of plaintiffs' property in conjunction with their investigation. On November 16, 2004, plaintiffs conducted a search for a vehicle believed to be involved in the 1971 disappearances. The search resulted in the digging of large holes on the Lykken property. Plaintiffs also allege that news media became aware of the search and defendants refused to ask them to leave the Lykken property despite the presence of "No Trespassing" signs. Plaintiffs assert that their property was unreasonably damaged during the course of the November search.

3

Finally, a third search of the Lykken property was conducted on February 5, 2007.  A search warrant authorized defendants to seize a Bible and writings relevant to the investigation.  Plaintiffs contend that defendants seized attorney-client communications during this search.

Plaintiffs allege that the searches were conducted in violation of their constitutional rights under the Fourth Amendment and bring this suit pursuant to 42 U.S.C. § 1983.  In addition to federal claims, plaintiffs also assert a number of state-law claims against defendants.  Defendants move for summary judgment on the § 1983 claims, asserting that they are entitled to qualified immunity.  Defendants also move for summary judgment on plaintiffs' state-law claims.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a

dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

### I.   Motion to Stay Pending Discovery

Plaintiffs move this court to stay its ruling on defendants' motions for summary judgment, arguing that they should be allowed to depose the named defendants.  Plaintiffs argue that it is inequitable to allow defendants to assert qualified immunity to prevent plaintiffs from conducting discovery and then file a fact-intensive summary judgment motion, relying on Estate of Sorrells v. City of Dallas, 192 F.R.D. 203, 209 (N.D. Tex. 2000).

"Qualified immunity protects government officials from the costs of trials and the burdens of broad discovery unless their discretionary acts

violated clearly established statutory or constitutional rights." <u>Wilson v. Northcutt</u>, 441 F.3d 586, 590 (8th Cir. 2006).  As such, the applicability of a qualified immunity defense is a threshold issue that may be resolved prior to discovery.  <u>Siegert v. Gilley</u>, 500 U.S. 226, 231, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991).

Defendants assert that plaintiffs have not alleged any violations of plaintiffs' well-established constitutional rights.  With regard to the alleged unreasonable seizure of Kerwyn, and allegations regarding the alleged unreasonable nature of the February 2007 search, the court finds that the legal significance of plaintiffs' allegations can be resolved without the benefit of discovery on the part of plaintiffs and the nature of the qualified immunity defense requires the court to do so to protect defendants from the "burdens of discovery." <u>Northcutt</u>, 441 F.3d at 590.  As discussed in more detail below, however, the court finds that plaintiffs are entitled to conduct limited discovery regarding their claims of unreasonable seizure of Esther and the unreasonable nature of the 2004 searches.  Additionally, because the court will exercise jurisdiction over plaintiffs' state-law claims, the court finds plaintiffs are entitled to conduct discovery with respect to those claims as discussed below to prevent the gamesmanship which concerned the court in <u>Estate of Sorrells</u>.  Accordingly, plaintiffs' motion to continue the

adjudication of defendants' motions for summary judgment is granted in part and denied in part.

## II.    Motion to Strike Affidavits

Defendants move to strike certain affidavits filed by plaintiffs. Docket 115. Defendants argue that the affidavits do not set forth evidence relevant to the qualified immunity inquiry conducted by the court. Defendants also assert that the second affidavit filed by David Hosmer contains improper attorney testimony. Plaintiffs object to the motion. Although the court recognizes that some information set forth in the affidavits is not relevant to the qualified immunity analysis, the court finds that striking the affidavits from the record is not necessary. The court will rely only upon evidence that it finds to be relevant and admissible in ruling on defendants' motions for summary judgment. See Fed. R. Civ. P. 56(e). Accordingly, defendants' motion to strike is denied.

## III.   Federal Claims

### A.  Count 1–Unreasonable Search and Seizure

Count 1 of the amended complaint asserts a claim pursuant to 42 U.S.C. § 1983 against all defendants stemming from the August and November 2004 searches. Plaintiffs allege that the searches were conducted in an unreasonable manner in violation of the Fourth Amendment. Defendants argue that they are entitled to qualified immunity on the § 1983 claim. Plaintiffs do not dispute that defendants are among the class of law

enforcement officers that enjoy qualified immunity, but rather argue that defendants are not entitled to qualified immunity under the facts of this case.

Qualified immunity serves as "an entitlement not to stand trial or face other burdens of litigation . . . ." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d. 411 (1985).  In determining whether a government official is entitled to qualified immunity, the court must first determine whether the allegations amount to a violation of a constitutional right.  <u>Sanders v. City of Minneapolis, Minn.</u>, 474 F.3d 523, 526 (8th Cir. 2007).  If a constitutional right has been violated, the court then must determine whether the constitutional right was clearly established at the time it was alleged to have been committed.  <u>Id.</u>  For a right to be "clearly established" under the second prong of the sovereign immunity analysis, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." <u>Saucier v. Katz</u>, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  If the plaintiff in a § 1983 case fails to meet either prong of the qualified immunity test, qualified immunity shields a law enforcement officer from suit. <u>Saucier</u>, 533 U.S. at 200-01.

Under the first prong, defendants argue that the allegations set forth by plaintiffs with regard to the 2004 searches do not rise to the level of a

constitutional violation.  The Fourth Amendment protects plaintiffs' "right to be free from an unnecessarily destructive search and seizure."  <u>Ginter v. Stallcup</u>, 869 F.2d 384, 388 (8th Cir. 1989).  "[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant[.]" <u>Dalia v. United States</u>, 441 U.S. 238, 257, 99 S. Ct. 1682, 60 L. Ed. 2d 177 (1979).  "[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness."  <u>Id.</u> at 259.

Plaintiffs allege multiple instances of conduct they assert was unreasonable.  Defendants do not dispute that they caused damage to the Lykken property, but rather assert that the manner in which the search was conducted was reasonable.  Defendants searched the residence for evidence of a suspected double homicide that occurred more than thirty years ago.  The search warrants authorized defendants to search for items ranging from a class ring to human remains and an automobile.  Docket 79, Ex. A, B.

In the context of such a search, the court finds that the digging of holes in areas of the Lykken property was not unreasonable, as defendants could have reasonably suspected that the vehicle or other items enumerated in the search warrant were buried on plaintiffs' property.  <u>See</u> <u>United States v. Becker</u>, 929 F.2d 442, 446 (9th Cir. 1991).  Further, extensive searches

through the interior of the house, and the necessary displacement of items that comes with such a search, is also reasonable.

But the court does not find that defendants have demonstrated as a matter of law that all of defendants' conduct was reasonable in the context of the 2004 searches.  Plaintiffs allege that defendants initiated the August 2004 search while plaintiffs were in the process of moving cattle.  Plaintiffs assert that defendants did not allow them to finish that chore, resulting in the cattle becoming spooked and causing damage to their property.  Plaintiffs allege that defendants did not allow them to tend to their farm for a period of four days while the August 2004 search was being conducted.  During the search, plaintiffs allege that defendants unplugged a freezer unit and allowed its contents to spoil.  Further, plaintiffs allege that Esther was not allowed to enter her home to turn off the stove or care for newborn kittens, a number of which died as a result.  During the November 2004 search, plaintiffs allege that defendants again unnecessarily caused plaintiffs' cattle to become spooked which in turn caused damage to the cattle and plaintiffs' property.

The court finds that plaintiffs are entitled to conduct limited discovery to determine whether the previously mentioned actions were reasonable in the context of the authorized search.  Although officers have discretion in the manner in which they execute valid search warrants, the search must

10

be reasonable under the circumstances, which here is in the context of the investigation of a crime alleged to have occurred more than thirty years ago. Accordingly, defendants will be allowed to depose the named defendants and conduct limited additional relevant discovery.

After plaintiffs have had an opportunity to conduct discovery, plaintiffs may submit a supplemental response to defendants' motion for summary judgment by **August 11, 2008**.  Defendants' reply brief is due **August 21, 2008**.  The court reserves ruling on defendants' motion for summary judgment regarding Count 1 until after receipt of the further briefing.

### B.  Count 2–Unreasonable Seizure of Esther

Count 2 of the amended complaint alleges that defendants DeVaney and Brady unreasonably seized Esther during the course of the August 24, 2004, search of the Lykken property.  Plaintiffs assert that Esther was seized for a total of "ten hours in the hot sun."  Docket 101 at 15.  Plaintiffs further assert Esther was repeatedly questioned during her seizure and that she was kept in custody in order to compel her to confess to wrongdoing. Id.

Defendants argue that their detention of Esther during the search was constitutional, and that they are therefore entitled to qualified immunity under the first prong of the qualified immunity inquiry.  The Supreme Court has held that a search warrant carries with it the implicit authority to

detain residents during the search.  Michigan v. Summers, 452 U.S. 692, 705, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981); see also Muehler v. Mena, 544 U.S. 93, 98, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005).

Defendants cite Mena for the proposition that the right to detain a person incident to a search is absolute.  Docket 80 at 4.  The Court in Mena did state that [a]n officer's authority to detain incident to search is categorical."  Mena, 544 U.S. at 98.  Although an initial detention is undoubtedly permissible, the court does not find Mena stands for the proposition that any and all detentions incident to a search are reasonable. Such a holding would eviscerate the "reasonableness" requirement of the Fourth Amendment.  In explaining the right to detain contemporaneous to a search, the Court in Mena relied heavily upon Summers, and noted that detention was justified by the governmental interest in "preventing flight in the event that incriminating evidence is found, minimizing the risk of harm to the officers, and facilitating the orderly completion of the search."  Mena, 544 U.S. at 98 (quoting Summers, 452 U.S. at 702-703) (internal quotations omitted).  In this case plaintiffs allege that Esther was detained outside for a period of ten hours during the search of her residence and farm.

Considering the factors set forth in Mena, it is not clear to the court which governmental interests required the alleged extended seizure of Esther.  The court will therefore allow plaintiffs to conduct limited discovery

12

with respect to the alleged unreasonable seizure of Esther.  After plaintiffs
have had an opportunity to conduct discovery, plaintiffs may submit a
supplemental response to defendants' motion for summary judgment by
**August 11, 208**.  Defendants' reply brief is due **August 21, 2008**.  The
court reserves ruling on defendants' motion for summary judgment on
Count 2 of the amended complaint until after receipt of the further briefing.

### C.  Count 3–Unreasonable Seizure of Kerwyn

Count 3 of the amended complaint asserts that defendants Braley and
Bucholz unreasonably seized Kerwyn on August 24, 2004.  Plaintiffs assert
that Kerwyn was compelled to go to Elk Point and submit to an interview
while the search was conducted.  Further, plaintiffs assert that Kerwyn was
told to drive to Vermillion and submit to a polygraph examination.

As discussed above, defendants had the authority to at least briefly
detain Kerwyn during the search of his property, and accordingly his
constitutional rights were not violated by his initial August 2004 seizure.
Additionally, it does not appear from the record that Kerwyn was detained
for any significant period of time.  In his affidavit, Kerwyn alleges that
defendants "told me that I was no longer welcome on the farm and they told
me that they wanted to talk with me in Elk Point.  Having no other place to
go I felt compelled to leave with them."  Kerwyn Affidavit, Docket 96 at 2.
Kerwyn also alleges that he was informed that defendants wanted to take
his polygraph in Vermillion, where he ultimately demanded to leave and was

13

allowed to return to the farm.  Id. There is no indication that Kerwyn was ever taken into custody, forced to submit to an interview, or that his "freedom to depart was restricted in any way."  See United States v. Martinez, 462 F.3d 903, 909 (8th Cir. 2006).  Kerwyn's cooperation with the requests of defendants does not result in an unconstitutional seizure. Because defendants did not unreasonably seize Kerwyn, defendants are entitled to qualified immunity on this claim.  Defendants' motion for summary judgment on Count 3 of the amended complaint is therefore granted.

### D.  Count 4—Insufficient Particularity of February 2007 Warrant

Count 4 of the amended complaint alleges that the February 2007 seizure of documents was done pursuant to a general warrant, and therefore was conducted in violation of the Fourth Amendment.  A review of the February 2007 warrant demonstrates that it is sufficiently particular to pass constitutional scrutiny.  See Andresen v. Marlyand, 427 U.S. 463, 479, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976) (holding that general warrants violate the Fourth Amendment).  The February 2007 warrant specifically authorized defendants to search for a Bible containing evidence of criminal activity and writings or other documentation contemporaneous with or related to the substance of defendants' investigation.  Docket 30, Att. 1. Although the warrant does not identify specifically the items sought by defendants, "where the precise identity of the goods cannot be ascertained

14

at the time the warrant is issued, naming only the generic class of items will suffice[.]" <u>United States v. Dennis</u>, 625 F.2d 782, 792 (8th Cir. 1980). Because the warrant was not constitutionally invalid, defendants are entitled to qualified immunity under the first prong of the qualified immunity analysis.[1]  Summary judgment on Count 4 is therefore granted.

### E.  Count 5–Lack of Probable Cause

Count 5 of the amended complaint alleges that Braley acted in violation of plaintiffs' constitutional rights by executing the February 2007 warrant without probable cause.  Defendants move for summary judgment based on sovereign immunity.

Assuming *arguendo* that the February 2007 warrant was issued without probable cause, to determine whether defendants are entitled to sovereign immunity the court must proceed to the second prong of the sovereign immunity test.  Under the second prong of the sovereign immunity analysis, whether the constitutional right is clearly established, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." <u>Saucier</u>, 593 at 202.  In <u>Groh v. Ramirez</u>, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d

---

[1]Plaintiffs do not argue that the legal correspondence seized was outside the scope of the warrant, conceding that the "overly broad warrant permitted [Braley] to seize legal correspondence."  Docket 101 at 19.  Rather, defendants argue that the warrant was insufficiently particular, an argument that this court rejects.

1068 (2004), the Court held that the execution of a warrant that "did not describe the items to be seized *at all*" was so "obviously deficient" that a reasonable officer would understand that execution of the warrant was in violation of the Fourth Amendment. (Emphasis in original.)  As discussed above with regard to Count 4, the warrant in this case described the items to be seized with sufficient particularity.  Therefore Braley's reliance on and execution of a warrant signed by a neutral judge was not unreasonable. United States v. Guzman, 507 F.3d 681, 686 (8th Cir. 2007); see also George v. City of St. Louis, 26 F.3d 55, 57 (8th Cir. 1994) ("In the context of a police officer obtaining a warrant, immunity will be lost only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.")  Defendants are therefore entitled to qualified immunity.  Summary judgment on Count 5 is granted.

**IV.    State-Law Claims**

    **A. Conversion and Trespass**

Defendants move for summary judgment on Counts 6 and 7 of the amended complaint, which allege claims of conversion and trespass arising from the 2004 searches.  Plaintiffs acknowledge that defendants' entering onto the Lykken property initially was privileged, but argue that defendants exceeded the scope of their privilege and therefore are liable for conversion and trespass.

Defendants argue that with respect to the August 2004 search, plaintiffs' claims are barred due to lack of notice.  SDCL 3-21-2 provides that no action for property damage may be maintained against a public entity unless "written notice of the time, place, and cause of the injury is given to the public entity . . . within one hundred eighty days after the injury."   Plaintiffs argue that because defendants did not plead lack of notice as an affirmative defense to their complaint, the defense is waived. Wolff v. Secretary of S.D. Game Fish & Parks, 544 N.W.2d 531, 535 (S.D. 1996).  Plaintiffs further argue that they substantially complied with the notice requirement when their counsel made written and oral contact with the South Dakota DCI and Attorney's General Office in 2004 and 2005.  See Myears v. Charles Mix County, 566 N.W. 2d 470, 474 (S.D. 1997). Defendants do not respond to these arguments and have put forth no evidence that they were not on notice of plaintiffs' suit within the 180-day period set forth in SDCL 3-21-2.  Defendants are therefore not entitled to summary judgment as a result of any alleged insufficient notice. Celotex Corp., 477 U.S. at 322.

Whether defendants "exceeded or abused" their privilege in the execution of the 2004 search warrants is a significant factor this court must consider in determining whether defendants are liable on plaintiffs' claims of trespassing and conversion.  See Bego v. Gordon, 407 N.W.2d 801, 809

17

n. 11 (S.D. 1987).  The court finds that plaintiffs are entitled to conduct discovery on the trespassing and conversion claims.  At this time, defendants' motion for summary judgment on the conversion and trespass claims is denied without prejudice.

### B.  Breach of Contract

Plaintiffs assert breach of contract claims against defendants Jones, Braley, and Devaney, asserting that they entered into contracts with plaintiffs to compensate them for damage to their property and subsequently failed to do so.  Each of the breach of contract claims alleges that the named defendant entered into the contracts "on behalf of the State of South Dakota."

Defendants argue that plaintiffs cannot bring a claim for breach of contract against defendants because an agent is not liable for a contract between the principal and third party under SDCL 59-5-2.  Plaintiffs seemingly acknowledge that their claims are in actuality asserted against the state.  Docket 101 at 23 ("Here, the 'essence' of the suit is money from the State.")  Because plaintiffs' claims for breach of contract cannot be brought against the agents in their individual capacity, summary judgment on those claims is granted.

Even if this court were to consider the claims to be claims against the state of South Dakota, this court would not have jurisdiction to hear those claims.  It is well established that the Eleventh Amendment prohibits a

18

citizen of a state from bringing suit against that state in federal court.

Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

That the state-law claim is before this court as a result of supplemental

jurisdiction does not affect the Eleventh Amendment analysis.  Pennhurst

State School & Hospital v. Halderman,, 465 U.S. 89, 120-21, 104 S. Ct. 900,

79 L. Ed. 2d 67 (1984).  For purposes of federal court jurisdiction, sovereign

immunity may be waived if the state voluntarily invokes federal jurisdiction

or if the state makes a "clear declaration" that it intends to submit itself to

federal jurisdiction.  McKlintic v. 36th Judicial Circuit Court, 508 F.3d 875,

877 (8th Cir. 2007) (internal citations omitted).  Waiver of sovereign

immunity by a state in its own courts does not result in consent to suit in

federal court.  Id.

Plaintiffs have made no argument, nor have they directed this court to

any authority, which suggests that South Dakota has made a clear

declaration that it has waived its sovereign immunity in federal courts in

situations analogous to the instant action.  Because plaintiffs' breach of

contract claims are properly construed as a claims against the state, they

are barred by the doctrine of sovereign immunity.  Ford Motor Co. v.

Department of the Treasury of State of Ind., 323 U.S. 459, 464, 65 S. Ct.

347, 89 L. Ed. 389 (1945) (overruled in part on other grounds).[2]  Defendants are entitled to summary judgment on the breach of contract claims.

### C.  Intentional Infliction of Emotional Distress

Plaintiffs allege claims of intentional infliction of emotional distress (IIED) against defendants Devaney, Brady, Bucholz, and Braley.  In order to establish a claim for IIED, plaintiffs must show: (1) an act by defendants amounting to extreme and outrageous conduct, (2) intent (or recklessness) on the part of defendants to cause plaintiffs severe emotional distress, (3) defendants' conduct was the cause-in-fact of plaintiffs' distress; and (4) plaintiffs suffered an extreme disabling emotional response to defendants' conduct.  Reeves v. Reiman, 523 N.W.2d 78, 83 (S.D. 1994).

Defendants assert that with regard to allegations arising from the August 2004 search and seizure, plaintiffs' claims are barred due to lack of notice.  For the same reasons set forth with respect to plaintiffs' claims for conversion and trespass, defendants' motion for summary judgment on that ground is denied.  Defendants also assert that plaintiffs allegations are not sufficient to demonstrate the first element of an IIED claim as a matter of law.  As with plaintiffs' claims for conversion and trespass, the court finds that plaintiffs are entitled to conduct discovery on their IIED claim before

---

[2]To the extent plaintiffs argue that sovereign immunity should not apply because the agents acted in violation of the South Dakota constitution, the court finds that argument is foreclosed by Pennhurst, 465 U.S. at 105-106.

the court reaches the merits of this claim.  As a result, summary judgment is denied without prejudice.

Based on the foregoing, it is hereby

ORDERED that defendants' motions for summary judgment (Dockets 39, 78, 83) are granted in part and denied in part as set forth in this order.

IT IS FURTHER ORDERED that plaintiffs' motion stay (Docket 104) is granted in part and denied in part as set forth in this order.

IT IS FURTHER ORDERED that the motions to amend scheduling order (Dockets 68 and 76) are granted.  The new deadline for completion of all discovery is **July 25, 2008**; motions deadline is **August 11, 2008**; and the deadline for motions to amend pleadings is **June 25, 2008**.

IT IS FURTHER ORDERED that defendants' motion to strike (Docket 115) is denied.

Dated April 30 2008.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE