UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KERWYN LYKKEN and<br>ESTHER LYKKEN, | ) | CIV. 07-4020-KES |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **ORDER GRANTING PLAINTIFFS'** |
| vs. | ) | **MOTION TO COMPEL** |
| | ) | |
| CRYSTAL BRADY, | ) | |
| MICHAEL BRALEY; | ) | |
| FRED DEVANEY; | ) | |
| TREVOR JONES; | ) | |
| KEVIN THOM; and | ) | |
| MIKE BUCHOLZ, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This is a civil action invoking the court's federal question jurisdiction under 28 U.S.C. § 1331 as well as the court's supplemental jurisdiction under 28 U.S.C. § 1367.  Plaintiffs Kerwyn Lykken and Esther Lykken filed a motion to compel defendants Michael Braley, Fred Devaney, Trevor Jones, and Kevin Thom, all employees of the South Dakota Division of Criminal Investigation (hereinafter "the DCI defendants"), to respond to certain discovery requests made by plaintiffs.[1]  The district court, the Honorable Karen E. Schreier, Chief

_____

[1]The DCI defendants recently notified the court of Michael Braley's death on April 27, 2008.

Judge, referred this motion to this magistrate judge for decision pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The facts concerning this lawsuit were extensively set forth by the district court in its order ruling on the motion for summary judgment filed by the defendants.  See Docket No. 137.  That statement of facts is incorporated by reference herein.

Facts pertinent to the current motion are as follows.  Previously, plaintiffs filed a motion to compel discovery responses from the DCI defendants.  In response to that motion and after a hearing at which both plaintiffs and the DCI defendants' counsel appeared by telephone, the court ordered the DCI defendants to produce to the court, *in camera*, the master list of all documents created in the searches of the plaintiffs' property.  After review, the court released that master list to plaintiffs.

Plaintiffs' current motion is based upon a review of that master list.  They identify documents plaintiffs believe are responsive to their original discovery requests that the DCI defendants have not yet provided.  Plaintiffs have described the documents requested and explained why plaintiffs believe these documents are relevant to plaintiffs' case.

The DCI defendants resist plaintiffs' motion to compel.  First, the DCI defendants argue that discovery in this case should be stayed pending

2

resolution of their motions for summary judgment on qualified immunity grounds.  Second, the DCI defendants argue that plaintiffs should not have the requested discovery because the requested documents constitute confidential criminal investigative information, the disclosure of which is against public interest "as it could infringe upon the privacy rights of individuals, including minors, who are neither parties to the criminal action or [sic] victims of any of the alleged crimes."  The DCI defendants assert that the state court in the criminal case against David Lykken issued an order sealing the search warrant affidavits.  The DCI defendants then argue that, if the search warrant affidavits are worthy of protection, then the information used to prepare the affidavits should be shielded from discovery as well.

In support of its resistance to discovery, the DCI defendants have filed an affidavit from the Assistant Director of the DCI averring that he has been involved in the investigation of David Lykken, including the execution of the two search warrants at the plaintiffs' homes, and that, while the criminal case against David Lykken has been dismissed by the state, nevertheless, the investigation of David Lykken is still on-going.  See Affidavit of Trevor Jones, Exhibit 1 to Docket No. 131.  The DCI defendants also submitted the affidavit of DCI defendant Michael Braley indicating that he prepared the affidavits in support of the search warrants for plaintiffs' property and that the information

contained within those affidavits "is the information gathered during the Jackson/Miller Death Investigation." Id., Exhibit 3.

Finally, the DCI defendants provide a copy of a November 14, 2007, order from a South Dakota circuit court temporarily sealing the search warrant affidavits until "an opportunity for formal notice and hearing should be afforded to the interested parties in order to fully consider the competing interests before a determination is made whether the affidavits or any portion of the affidavits should remain sealed." Id., Exhibit 2. The order specifically provides that any interested party may apply to the court requesting that the affidavits in support of the search warrants be unsealed, and that a hearing will be held by the court in response to such application after notice to all interested parties. Id. Neither party has indicated to this court whether any party applied to the state court seeking to unseal the affidavits.

## DISCUSSION

### A.    Objection Based on Assertion of Qualified Immunity

The first objection to plaintiffs' discovery request interposed by the DCI defendants was that they had filed with the district court a motion for summary judgment on the grounds of qualified immunity. The DCI defendants argued that qualified immunity provides not only immunity from liability, but also immunity from responding to the demands of litigation. Therefore, they

4

urged that the plaintiffs' motion to compel be denied until the summary judgment motion was determined.

The district court has resolved the pending summary judgment motion, granting it in part, and denying it in part. See Order Granting in Part and Denying in Part Motions for Summary Judgment [Docket No. 137]. Several of the Lykkens' federal and state claims survived summary judgment. Id. As to those claims that survived, the district court specifically concluded that the Lykkens be allowed to conduct limited discovery in order to determine whether the DCI defendants' actions were reasonable in the context of the authorized search, and whether they exceeded or abused their privilege to enter onto the plaintiffs' property. See id. at pages 10–11, 12-13, 17-18.

Of note to the plaintiffs' current motion to compel, the district court granted summary judgment to the defendants on all § 1983 claims that were based upon the search warrants. Count 4, a § 1983 claim alleging that the February 2007 search warrant failed to describe with particularity the things to be seized was dismissed. Also, Count 5, a § 1983 claim alleging that the February 2007 search warrant lacked probable cause was dismissed.

Because the summary judgment motion has been resolved, the DCI defendants' objections to the plaintiffs' discovery on the grounds of the pending summary judgment motion is overruled. The court now turns to the merits of the DCI defendants' other objection.

**B.      Objection Based on Law Enforcement Records Privilege**

The DCI defendants also opposed the Lykkens' motion to compel on the basis that the information requested is privileged because it is information pertaining to an ongoing criminal investigation.  The only authority cited by the DCI defendants in support of this argument is a legal encyclopedia, American Jurisprudence 2d, and a state statute, SDCL § 23-5-10.

**1.      Standards Applicable to Claims of Privilege**

With regard to the assertion of a privilege as a bar to discovery, there are both procedural and substantive requirements that must be satisfied before the privilege will be recognized.  Procedurally, Rule 26 of the Federal Rules of Civil Procedure outlines what must be done to assert a privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i)     expressly make the claim; and
>
> (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See Fed. R. Civ. P. 26(b)(5)(A).

Substantively, federal law also supplies the rule of law for privileges in this case.  Congress adopted the following rule as to evidentiary privileges:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed

6

> by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

See Fed. R. Evid. 501.  Although Rule 501 is a rule of evidence, and the current dispute concerns an issue of discovery, Rule 501 applies to all stages of all actions, cases, and proceedings, including discovery proceedings.  See Fed. R. Evid. 1101(c); see also 3 Joseph M. McLaughlin, Jack B. Weinstein, and Margaret A. Berger, Weinstein's Fed. Evidence, § 501.02[4] (2008).  A party asserting a privilege with regard to items sought in discovery has the burden of proving that a factual basis exists for that privilege.  Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997); Cottier v. City of Martin, WL 4568989, **2-3 (D.S.D. Dec. 19, 2007); Fed. R. Civ. P. 26(b)(5)(A).

This proceeding is premised on both federal and state law.  Specifically, the Lykkens have two pending causes of action under 42 U.S.C. § 1983, and

several claims based on state law, including trespass, conversion, and intentional infliction of emotional distress.[2]

Where a lawsuit includes federal claims and, under the court's supplemental jurisdiction, also state law claims, and federal and state privilege law conflict with each other, Rule 501 does not indicate whether the state or federal privilege rule should be followed.  See Fed. R. Evid. 501.  The United States Supreme Court has noted this problem, but not ruled on it.  See Jaffee v. Redmond, 518 U.S. 1, 15 n.15 (1996) (noting, in a section 1983 action with supplemental state law claims, that state law would provide a privilege, while federal common law would not, but refusing to express an opinion on the matter because the parties had not raised the issue and the resolution of the case did not depend upon determining whether state or federal privilege law applied).

One authority on federal rules of privilege indicates that in cases involving mixed federal and state civil claims with conflicting privilege rules, the "usual solution" by federal courts has been "a preference for the federal privilege," especially where the federal privilege would result in the

---

[2]Originally, the Lykkens had asserted five separate claims under § 1983 and three state law claims of breach of contract, in addition to the trespass, conversion, and emotional distress claims.  See First Amended Complaint, Docket No. 36, Counts 3-5, and 8-10.  However, the district court granted summary judgment on three of the § 1983 claims and all of the breach of contract claims, so they are no longer before the court.  See Order Granting in Part and Denying in Part Motion for Summary Judgment, Docket No. 137.

admissibility of evidence and the state law would prevent its admission.  See 3
Weinsten's Fed. Evidence, § 501.02[2][c].

No Eighth Circuit case apparently addresses this issue.[3]  However, the
Southern District of Iowa, in a thoughtful and thorough opinion, has.  See
Hansen v. Allen Memorial Hosp., 141 F.R.D. 115 (S.D. Iowa 1992).  In the
Hansen case, the plaintiff had asserted a federal age discrimination claim, but
also some "pendent" state law claims.  Id. at 116.[4]  The Hansen court noted
that, if the plaintiff's claims had been premised solely on federal law, there
would be no question that, under Fed. R. Evid. 501, the federal common law of
privilege would apply.  Id. at 119.  Where a plaintiff asserts both federal claims
and state claims, the Hansen court found the legislative history of Rule 501 to

_____

[3]Although the Eighth Circuit has not affirmatively held that the federal
common law of privilege applies in cases in which federal civil claims are also
accompanied by civil claims premised on state law, there is an Eighth Circuit
case in which the court applied the federal common law of privilege to civil
claims based on the federal Racketeer Influenced and Corrupt Organizations
Act.  See In re Bieter, 16 F.3d 929, 935 (8th Cir. 1994).  Although the 1994 case
does not mention any state law claims being asserted, an opinion on an earlier
appeal reveals that, in addition to the federal RICO claims, the plaintiff had
also asserted state law tort claims.  See Bieter Co. v. Blomquist, 987 F.2d
1319, 1323 n.2 (8th Cir. 1993).  Thus, although the Eighth Circuit has not
affirmatively discussed and addressed the issue, it has applied federal privilege
law in a case involving both state and federal claims.  In re Bieter, 16 F.3d at
935.  The Bieter court cited the Hansen decision for the proposition that the
federal law of privilege controls.  Id.

[4]The concepts of pendent and ancillary jurisdiction were supplanted in
1990 by the enactment of 28 U.S.C. § 1367, describing a new concept termed
"supplemental jurisdiction."

be inconclusive as to the question whether federal or state privilege law should apply.  Id. at 119-121.

The court then examined decisions from other courts and concluded that, where the issue is the discoverability of evidence that is relevant to both the federal and the state claims, courts have consistently held that federal law determines the existence and scope of any asserted privilege.  Id. at 121 (citing von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987); William T. Thompson Co. v. General Nutrition Corp., 671 F.2d 100, 104 (3d Cir. 1982); Memorial Hosp. for McHenry County v. Shadur, 664 F.2d 1058, 1061 & n.3 (7th Cir. 1981); First Federal Sav. & Loan v. Oppenheim, Appel, Dixon & Co., 110 F.R.D. 557, 560 (S.D.N.Y. 1986); Sneirson v. Chemical Bank, 108 F.R.D. 159, 162 (D. Del. 1985); Dorsten v. Lapeer County Gen. Hosp., 88 F.R.D. 583, 586 (E.D. Mich. 1980); Sirmans v. City of South Miami, 86 F.R.D. 492, 494-495 (S.D. Fla. 1980); F.D.I.C. v. Mercantile Nat'l. Bank of Chicago, 84 F.R.D. 345, 349 (N.D. Ill. 1979); Robinson v. Magovern, 83 F.R.D. 79, 84-85 (W.D. Pa. 1979); Lewis v. Capital Mtg. Investments, 78 F.R.D. 295, 312-313 (D. Md. 1978); Perrignon v. Bergen Brunswig Corp., 77 F.R.D. 455, 458-459 (N.D. Cal. 1978)).

This court agrees with the reasoning of the Hansen court and concludes that the federal law of privilege controls even when state law claims are asserted along with the federal claims.  Hansen, 141 F.R.D. at 121.  See also

Ray v. Winslow House, Inc., WL 33655723 (N.D. Iowa 1999) (applying federal privilege law to discovery issue where plaintiff had asserted both federal and state law claims).

### 2.   Law Enforcement Records Privilege

#### a.   State law of privilege

Even when the federal common law of privilege applies in a case, as it does here, it is appropriate, for reasons of comity, to at least consider the applicable state law of privilege, to the extent there is any such law.  Hansen, 141 F.R.D. at 122 (citing Shadur, 664 F.2d at 1061; Moorhead v. Lane, 125 F.R.D. 680, 682 (C.D. Ill. 1989)).  Where a state has created a privilege, an expectation on the part of its citizens that the material will be held confidential may have been created.  Id.  Federal courts should not trample on that expectation by mechanically and unnecessarily applying a federal rule.  Id.

There are several factors a court should consider when making a privilege determination under Fed. R. Evid. 501.  Hansen, 141 F.R.D. at 122. First, because evidentiary privileges exclude relevant evidence and present an obstacle to the fact-finding function, they are not favored and are to be narrowly construed.  Id.  As the Supreme Court has said, privileges are an exception "to the demand for every man's evidence and are not lightly created nor expansively construed for they are in derogation of the search for truth." United States v. Nixon, 418 U.S. 683, 710 (1974).

Second, in considering whether to give effect to a state privilege, it is important to consider "the particular factual circumstances of the case in which the issue arises." Hansen, 141 F.R.D. at 122 (quoting Shadur, 664 F.2d at 1061; Lane, 125 F.R.D. at 683). Of particular importance, the court should identify the policy behind the creation of the privilege, and examine whether application of the privilege under the facts of the case will in fact further that policy or not. Id.

The statute cited by the DCI defendants, SDCL § 23-5-10, does not itself create a privilege. Instead, it is a definitional statute which defines "confidential criminal justice information" as "criminal identification information compiled pursuant to chapter 23-5, criminal intelligence information, criminal investigative information, criminal statistics information made confidential pursuant to § 23-6-14, and criminal justice information otherwise made confidential by law." See SDCL § 23-5-10(1). The term "criminal investigative information" is itself defined as "information associated with an individual, group, organization, or event compiled by a law enforcement agency in the course of conducting an investigation of a crime or crimes. This includes information about a crime or crimes derived from reports of officers, deputies, agents, informants, or investigators or from any type of surveillance." See SDCL § 23-5-10(4).

12

A separate statute from this definitional statute provides that "confidential criminal justice information" is exempt from the provisions of SDCL § 1-27-1.  See SDCL § 23-5-11.  Section 1-27-1 is a state law analog to the federal Freedom of Information Act which provides for public access to governmental records.  See SDCL § 1-27-1.  Under § 23-5-11, information about calls for service do not fall within the confidentiality provision unless such information "would jeopardize an ongoing investigation."  SDCL § 23-5-11.  As to types of confidential law enforcement information that do not constitute a "call for service," there is no requirement that interference with an ongoing investigation be shown in order for the information to be protected.  Id. There are no South Dakota cases interpreting its privilege for "confidential criminal justice information."

### b.  Federal common law

There is a limited, federal common law of privilege which protects criminal investigatory files.  See Stephens Produce Co. v. NLRB, 515 F.2d 1373, 1376 (8th Cir. 1975); see also Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1124 (7th Cir. 1997).  The privilege is a "very narrow one and need only be honored where the policy behind its invocation by the agency outweighs any necessity for the information shown by the party seeking it." Stephens Produce Co., 515 F.2d at 1377.  The privilege may not be used by agencies to "indiscriminately hide all nominally 'investigatory materials' from

13

public scrutiny." Id. The "mere incantation" of the privilege is not sufficient; rather, the agency must adduce facts sufficient to determine that the privilege applies, that the policy behind the privilege will be furthered by applying the privilege, and that the needs of the agency for privacy outweigh the litigant's need for the documents. Id. Once the agency has properly invoked the privilege, the requesting party must show "something more than the mere hope or surmise that impeaching evidence will be found in the investigatory file" in order to overcome the privilege. Id.

On the related issue of the privilege with respect to the identity of informers who assist by providing information for a law enforcement investigation, the Eighth Circuit has stated that the "purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Mitchell v. Bass, 252 F.2d 513, 516 (8th Cir. 1958). However, where the contents of a witness's statement can be disclosed without tending to reveal the identity of the witness, the privilege does not apply. Id. Also, where the identity of the witness has already been disclosed, the privilege no longer applies. Id.

14

In the <u>Stephens Produce Co.</u>, case, an employer in an NLRB enforcement action had obtained copies of written witness statements given to an NLRB investigator in the course of the NLRB investigation, but sought to also subpoena the NLRB investigator to obtain his testimony as to the taking of the witness statements.  <u>Stephens Produce Co.</u>, 515 F.2d at 1375-1376.  The Eighth Circuit affirmed the quashing of the subpoena of the investigator, noting that the employer had received copies of the witness statements and that each of the witnesses testified and were available for cross-examination at the hearing.  <u>Id.</u> at 1377.  Under these circumstances, the employer had not shown sufficient reason to disregard the privilege in order to compel the NLRB investigator to testify, characterizing the employer's attempt "to produce the investigator to rebut both the witnesses and their sworn statements" as bordering on "the ridiculous."  <u>Id.</u>

In the <u>Bass</u> case, the Secretary of Labor had investigated alleged violations under the Fair Labor Standards Act by interviewing seven employees of  defendant-employer Bass-Clark Lumber Company.  <u>Bass</u>, 252 F.2d at 515-516.  An enforcement action against Bass-Clark was then brought.  <u>Id.</u>  Three of the seven employees agreed to give statements to Bass-Clark, but four employees refused to talk to the employer.  <u>Id.</u>  Bass-Clark then sought an order compelling the Secretary to disgorge the statements from the four uncooperating witnesses.  <u>Id.</u>  The Secretary asserted both the informer's

15

privilege and the executive privilege.  Id. at 516.  The court dispensed first with the informer's privilege, refusing to recognize it under these circumstances because the Secretary had already voluntarily disclosed the identities of the four witnesses, thus obviating the policy behind the privilege of protecting the identify of informers.  Id. at 517.

As to the claim of executive privilege, the court also refused to apply that privilege under these facts.  Id. at 517-519.  In so doing, the court noted that the statements did not constitute work product and Bass-Clark had attempted to obtain the information by talking to the witnesses directly, and they had refused.  Id.  Furthermore, inasmuch as the identities of the witnesses were already disclosed and it was probable that they would be called upon to testify at trial, the court held that the Secretary had failed to show that it would suffer any serious prejudice as a result of the disclosure of the statements.  Id. at 519.

Because of the paucity of cases developing the federal common law investigatory file privilege, many courts have analogized from decisions rendered under the exemption from disclosure for law enforcement investigatory files under the Freedom of Information Act ("FOIA").  See Campbell v. Department of Health & Human Services, 682 F.2d 256 (D.D.C. 1982); Wellford v. Hardin, 444 F.2d 21 (4th Cir. 1971).  In general, courts interpreting FOIA have held that the primary concern over disclosure of law

16

enforcement reports is to prevent a party who is himself the subject of a criminal investigation from obtaining premature discovery of law enforcement actions that may be taken against him.  See 3 <u>Weinsten's Fed. Evidence</u>, § 509.24[2][a].  Where there is no prospect of law enforcement proceedings being taken, or where the enforcement action has already been taken, or where the party seeking discovery is not the party who is the subject of the investigation, "the rationale for nondisclosure does not apply, and the files should be made available."  <u>Id.</u>  Even when the requested discovery concerns an enforcement action that is current or imminent, the privilege does not apply unless disclosure is contrary to public interest.  <u>Id.</u> at § 509.24[3].

For example, in the <u>Wellford</u> case, the Fourth Circuit refused to grant a privilege under FOIA to law enforcement investigatory files where the enforcement action against the target of the action had already been initiated, and the requesting party was someone other than the target.  <u>Wellford</u>, 444 F.2d at 23-23.  The purpose of the privilege, the court explained, was to "prevent premature discovery by a defendant in an enforcement proceeding." <u>Id.</u> at 23.  Because allowing discovery in this case under these circumstances did not undermine the purpose for which the privilege was created, the court ordered that the materials be produced.  <u>Id.</u> at 24-25.

Similarly, in the <u>Campbell</u> case, Justice Ginsberg, then an appellate judge on the District of Columbia Circuit Court, wrote that the purpose of the

17

FOIA exemption for law enforcement investigatory files was to "protect 'the Government's case in court,' " by making sure that the defendant in an enforcement action could not obtain "indirectly any earlier or greater access to investigatory files than he would have directly" in enforcement proceedings. Campbell, 682 F.2d at 261 (quoting the Senate and House Reports on the FOIA exemption). Discussing the leading Supreme Court case interpreting the FOIA exemption for investigative files, NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978), the Campbell court noted that the exemption was designed to limit "blanket exemptions" for government records simply because they were compiled for law enforcement purposes. Campbell, 682 F.2d at 263. Instead, the exemption only applies in situations where disclosure of law enforcement investigatory files would interfere with enforcement proceedings. Id. (citing Robbins Tire & Rubber Co., 437 U.S. at 236-242). The Campbell court held that, in order to establish the existence of the exemption, the government must show, by affidavit, sufficient facts and information that would justify the court in concluding that disclosure of the investigatory files would interfere with an enforcement proceeding. Campbell, 682 at 265. The court held that the court had discretion to accept such submissions *in camera*. Id.

The Eighth Circuit, in a case in which the government urged an exemption from FOIA for law enforcement records that would disclose confidential information furnished by a confidential source, held that the

18

government must prove sufficient facts, by affidavit, to establish the grounds for the exemption.  See Parton v. United States, 727 F.2d 774, 776 (8th Cir. 1984).  The court held that the district court had the discretion to use *in camera* procedures in evaluating the claim of exemption made by the government.  Id.  However, even though the court held that the government had adequately established the exemption for purposes of resisting disclosure under FOIA, the Eighth Circuit expressed no opinion as to whether the plaintiff could subpoena those materials in his § 1983 action.  Id. at 777.

The Parton decision was cited several times in Cleary v. Federal Bureau of Investigation, 811 F.2d 421 (8th Cir. 1987).  In Cleary, a law professor had been shot at while on his way to the Iowa State Penitentiary to consult with his inmate clients.  Id. at 422.  The FBI investigated, but found insufficient information to bring criminal charges or to further investigate.  Id.  Cleary then filed a FOIA request, seeking the FBI's investigative file.  Id. at 422-423.  The FBI withheld the names of persons it interviewed and the identities of the FBI agents who conducted the investigation pursuant to two FOIA exemptions:  (1) the confidential source exemption, and (2) the unwarranted invasion of personal privacy exemption.  Id. at 422.  The Eighth Circuit affirmed the FBI's invocation of the two exemptions, but more interesting as to this case, commented on the proper procedure for the invocation of the exemptions:

> The federal courts and federal judges are ill-suited to assume the role of super-administrator in FOIA cases.  A court's primary role,

19

therefore, is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position, utilizing an *in camera* examination of the [material] itself as an aid in determining whether the Government's affidavits are accurate and made in good faith.  If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with applicable law, the district court should uphold the Government's position.  The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

Id. at 423.

In a more recent Eighth Circuit case, Miller v. United States Dept. of Agriculture, 13 F.3d 260 (8th Cir. 1993), Miller, a rancher, was involved in 1987 in the purchase of cattle shipped across state lines that proved to be infected with brucellosis.  Id. at 261.  The United States Department of Agriculture ("USDA") investigated and generated internal investigative reports which Miller attempted to obtain under FOIA.  Id. at 261-262.  The USDA refused to produce the reports based on the law enforcement investigatory exemption.  Id. The district court granted summary judgment based on affidavits submitted to the court by the USDA.  Id. at 262, 264.

The Eighth Circuit reversed, noting that the USDA had adequately established the first prong of its burden, that the reports were part of an investigatory file.  Id. at 263.  However, the Miller court reversed the district court's reliance on the USDA affidavits to establish that the disclosure of the

reports could reasonably be expected to interfere with enforcement proceedings.  Id.

As to the second prong of the government's burden, the Eighth Circuit characterized the USDA affidavits as being "of the boilerplate, conclusory variety."  Id.  The Eighth Circuit held that the USDA must make a more particularized showing of interference, otherwise the exemption based on interference with enforcement proceedings "would stand as a universal bar against disclosure, and that is obviously not what Congress intended."  Id.  The court went on to outline the government's burden on remand: "We conclude that the government must make a more specific showing of why disclosure of the documents requested here could reasonably be expected to interfere with enforcement proceedings and that it has not yet done so."  Id.

In another FOIA case, the district court had required the government to submit a Vaughn[5] index in support of its assertion of the investigatory files exemption.  See Crancer v. United States Dept. of Justice, 999 F.2d 1302, 1304-1305 (8th Cir. 1993).  The Eighth Circuit reversed, holding that the requirement of the Vaughn index, which would have required the government to describe the *contents* of each document withheld and the reasoning for withholding each document, was too burdensome.  Id. at 1309-1311.  Rather,

---

[5]Vaughn v. Rosen, 484 F.2d 820, 826-828 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

the <u>Crancer</u> court held that the government need only provide an index that described *categories* of documents and the reasons for withholding each category, with the district court retaining discretion to require submission of the actual documents *in camera* if the privilege issue could not be resolved based on the government's submission.  <u>Id.</u>

In <u>National Archives and Records Admin. v. Favish</u>, 541 U.S. 157 (2004), Favish made a FOIA request of death-scene photographs contained in the criminal investigatory file of Vincent Foster's death, asserting that he desired to show that the government's investigation was "grossly incomplete and untrustworthy."  <u>Favish</u>, 541 U.S. at 160-164.  The National Archives refused to produce the photographs, asserting that they were exempt from disclosure under FOIA because they were "records or information compiled for law enforcement purposes" the production of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  <u>Id.</u> at 160 (quoting exemption 7(C), 5 U.S.C. § 522(b)(7)(C)).

The Court stated that, normally, when a person seeks disclosure under FOIA, they are not required to establish the purpose for which they are requesting the information.  <u>Id.</u> at 172.  However, when the request is for information protected by an exemption, and the information is being sought in order to show "that responsible officials acted negligently or otherwise improperly in the performance of their duties," the person making the request

"must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Id. at 174.

Whether the claim of privilege is characterized as protecting the integrity of the law enforcement investigatory process, or protecting the identity of informers who had an expectation of confidentiality when they gave information to the government, it is clear that the privilege is not subject to bright-line, clearly defined rules that apply in every case.  Indeed, the Supreme Court has stated in an analogous case:

> We believe that no fixed rule with respect to disclosure is justifiable.  The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his [case].  Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

See Rovario v. United States, 353 U.S. 53, 62 (1957).

Similarly, the Court has indicated that where the showing of necessity is very strong, "the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied" that the policy behind the privilege is supported by applying it in this instance.  United States v. Reynolds, 345 U.S. 1, 11 (1953).

23

See also Cleary, 811 F.2d at 423-424 (recognizing that the law enforcement investigatory file privilege requires a balancing test).

### c.   Application of the Law to the Facts of this Case

Applying both the substantive and procedural law from the above cases, it is clear that the record presented by the parties is woefully inadequate for the court to conclude that the privilege urged by the DCI defendants should be applied in this case.  As an initial matter, the court notes that the state privilege conflicts with the federal privilege.  The state privilege would apply upon a showing only that the documents requested are part of a criminal investigatory file with no showing required that the disclosure of the records would interfere with enforcement proceedings or violate any person's expectation of privacy.  See SDCL § 23-5-11.  The federal privilege, on the other hand, requires a showing that the documents requested are part of a criminal investigative file *and* a showing that disclosure of the records would interfere with enforcement proceedings or an informer's expectation of confidentiality.  See Miller, 13 F.3d at 263-264; Cleary, 811 F.2d at 422-423; Parton, 727 F.2d at 776-777; and Bass, 252 F.2d at 515-517.

However, this difference between the state and federal privilege may be less different ideologically than might appear at first blush.  Both the state of South Dakota and the federal government have expressed a policy in favor of the free-flow of information and government documents to its citizens.

24

Compare SDCL § 1-27-1 with 5 U.S.C. § 552.  Furthermore, although no decisions exist interpreting the state privilege, it would appear that the purpose of both the state and federal privilege are the same:  to prevent disclosures of parts of criminal investigatory files where to do so would interfere with the purpose of law enforcement–i.e. by discouraging citizens to make reports to law enforcement and by allowing a defendant to obtain information about his case before an enforcement proceeding has started.  Under these circumstances, the court concludes that application of the federal common law investigatory files privilege is the appropriate route in this case.  See Hansen, 141 F.R.D. at 124.

Applying that federal privilege, the court notes that the DCI defendants have adequately established that the documents requested are part of an on-going, 30-year-old investigation of David Lykken.  The fact that the state has taken such a long time in investigating, or that it filed a criminal action against David Lykken and then dismissed that action, is not a basis for the court to refuse to apply the investigatory file privilege.  The FBI's investigation into the death of Jimmy Hoffa in the 1960s is still characterized as on-going, and the Eighth Circuit has accepted that characterization at face value in applying the investigatory files privilege.  See Crancer, 999 F.2d at 1310.  It is the second prong of the privilege that the DCI defendants have not met.

The court has not received a description, with any particularity, of the documents the DCI is withholding.  To characterize the affidavits submitted by

the DCI as "conclusory" and "boilerplate" is a kindness.  The affidavits do not establish, in particular, how disclosure of the documents it is withholding would interfere with enforcement proceedings or violate an expectation of confidentiality of any informers.

For example, the enforcement proceeding against David Lykken was brought once already by the state of South Dakota.  Extensive discovery was made to David Lykken and that case was dismissed by the state on the eve of trial.  A pretrial evidentiary hearing was held by the state court judge in which many of the state's prospective trial witnesses testified, with their names being reported in local newspapers.

In evaluating the privilege asserted by the DCI defendants in this litigation, it would be important to know whether the identity of the state's informers has already been disclosed, either in papers provided in discovery to David Lykken, and/or by those witnesses testifying at the pretrial hearing in State v. David Lykken.  Also, it would be important to know whether it is possible to disclose copies of the documents being withheld with the names of the informers redacted and so protect the identity of the informers.  Finally, to the extent any documents being withheld bear *solely* on the issue of whether the search warrants issued in this case were supported by probable cause, or whether the warrants described items to be seized with particularity, discovery of those documents has been made moot by the district court's granting of

26

partial summary judgment as to the plaintiffs' § 1983 claims that were premised on the search warrant.

The burden of establishing the existence of the privilege rests upon the DCI defendants.  See Fed. R. Civ. P. 26(b)(5)(A); Rabushka, 122 F.3d at 565; Cottier, WL 4568989, **2-3.  The DCI defendants have not carried their burden.  The plaintiffs have established the discoverability of the documents, in general, under the federal rules.  Furthermore, discovery is not being sought before an enforcement action is begun, but rather after.  Also, the discovery is not being sought by the target of the enforcement action, although plaintiffs are blood relatives of the target.  Accordingly, the court will grant the Lykkens' motion to compel.

However, recognizing the importance of the privilege at stake, and the importance of comity between state and federal systems of justice, the court will grant the DCI defendants 20 days from the date of this order in which to make an adequate showing in support of the privilege, in accordance with the substantive and procedural law outlined in this opinion.  If the DCI defendants elect to make such a supplemental showing in support of the privilege it asserts, it is ordered to also submit to the court, *in camera*, an index describing the categories of documents withheld and the reason for withholding each described category.  Alternatively, if the DCI defendants believe it would be more expedient to do so, the DCI defendants may elect to submit the

27

documents themselves to the court for *in camera* inspection along with their explanation of why they believe the privilege applies.

## CONCLUSION

The Lykkens' motion to compel [Docket No. 120] is granted, subject to a 20-day grace period as described above in which the DCI defendants may elect to make the additional showing in support of their claim of privilege as described.  Failure by the DCI defendants to make an additional showing in support of their claim of privilege within 20 days will result in this order granting the Lykkens' motion to compel to be conclusive.

## NOTICE TO PARTIES

A motion to compel discovery is not a dispositive motion.  Therefore, the decision of this court can be appealed to the district court only upon a showing that the decision is clearly erroneous or contrary to law.  <u>See</u> 28 U.S.C. § 636(b)(1)(A).  Objections must be filed with the district court within 10 days of the date of this decision.  <u>See</u> Fed. R. Civ. P. 72(a).

Dated May 14, 2008.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE